UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOYLE G. GALIN

      Petitioner,

v.                            Case No. 8:08-cv-254-T-23TBM

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

    Doyle G. Galin petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state convictions for sexual battery on a person twelve years or older and commission of a lewd and lascivious act on a child under sixteen.  Galin alleges thirty-one grounds for relief.[1]  Numerous exhibits ("Respondent's Exhibit __") support the response.

## FACTS[2]

    The fifteen year-old victim and Galin's stepdaughter were friends.  On the night of the offenses the victim stayed at the stepdaughter's home where Galin also resided. The victim and the stepdaughter consumed alcohol and both went to sleep in the same bed.  Later that night Galin got into the bed with the victim and his stepdaughter.  Galin touched and orally stimulated both girls' breasts.  Galin also performed oral sex on the

---

[1] Galin numbered his grounds one through sixteen and eighteen through thirty-two.  The petition includes no ground seventeen.  (Doc. 1, pp. 18-19)

[2] This summary of facts derives from Galin's brief on direct appeal (Respondent's Exhibit 2)

victim.  The victim testified at trial to Galin's sexual acts upon her and to the alleged

sexual acts upon his stepdaughter.  The stepdaughter testified that Galin never

assaulted her.

## I.  <u>NO FEDERAL QUESTION</u>

**Grounds One through Four and Twenty-two**

In ground one Galin contends that the state trial court erred by entering a written

judgment that failed to comport with the trial judge's oral pronouncement at sentencing.

Galin argues that this error violates state law.  In ground two Galin contends that the

state trial court's denial of his motion for judgment of acquittal resulted in a denial of "his

Fourteenth Amendment guarantees."  In ground three Galin contends that the state trial

court erred by denying a motion in limine to preclude testimony about an uncharged

offense.  In ground four Galin contends that the state trial court erred by entering

"indictments and sentences that did not comport with the trial court's oral

pronouncements."  In ground twenty-two Galin contends that the state trial court

improperly added points to his sentencing guidelines scoresheet resulting in a longer

sentence.

Federal habeas relief for a person in custody pursuant to the judgment of a state

court is available only on the ground that the custody violates the Constitution, laws, or

treaties of the United States.  28 U.S.C. § 2254(a).  <u>See</u> <u>also</u> Jones v. Goodwin, 982

F.2d 464, 471 (11th Cir. 1993).  Galin's claims challenging the state court's failure to

follow a state procedure present no basis for federal habeas corpus relief because the

claims present no federal constitutional question.  28 U.S.C. § 2254(a).  <u>See</u> <u>also</u>

Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation.  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976).  Consequently, grounds one, two, three, four and twenty-two warrant no relief.

**Ground Thirty-two**

Galin inquires:

Whether this petition for [the] writ of habeas corpus . . . is the proper procedural vehicle for Petitioner to use in obtaining the relief he seeks of either a new trial or dismissal of his case completely due to the State's misconduct during trial?

(Doc. 1, p. 26)  This ground presents no basis for federal habeas relief because Galin fails to allege the violation of a constitutional right.  28 U.S.C. § 2254(a).

## II.   EXHAUSTION AND PROCEDURAL DEFAULT

### A.   Grounds raised in neither Rule 3.850 motion or state habeas petition

**Ground Thirteen**

Galin contends that his trial counsel rendered ineffective assistance by failing to object during the victim's testimony.  He argues that this failure "allowed the [prosecutor] to erroneously introduce a temporal break into the alleged incident."  Galin failed to present this claim to the state court in his Rule 3.850 motion, leaving the claim unexhausted.

Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Boerckel, 526 U.S. at 842. See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." Pruitt v. Jones, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." Pruitt, 348 F.3d at 1358-59 (quoting Boerckel, 526 U.S. at 845). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. See Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations

of its prisoners' federal rights.'") (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004).

The state rule precluding a successive Rule 3.850 motion bars Galin's returning to state court to present his federal claim in a second Rule 3.850 motion. See Fla. R. Crim. P. 3.850(b). Consequently, the claim is procedurally defaulted.

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). See also Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. Henderson, 353 F.3d at 892; Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Carrier, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. Schlup v. Delo, 513 U.S. 298, 327 (1995); Henderson, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. Schlup, 513 U.S. at 327.

Galin fails to demonstrate either cause and prejudice excusing his default or a fundamental miscarriage of justice. See Smith, 256 F.3d at 1138. This failure to proffer specific facts showing an exception to procedural default renders ground thirteen procedurally barred from federal review.

**Grounds Twenty-four through Thirty-one**

In ground twenty-four Galin alleges a claim of prosecutorial misconduct based on the prosecutor's alleged violation of a pretrial order precluding testimony from the victim about the alleged sexual assault upon Galin's stepdaughter. In ground twenty-five Galin alleges that the prosecutor intentionally elicited false testimony. In ground twenty-six Galin alleges that the prosecutor "did not follow constitutional requirements to introduce [inadmissible evidence of a collateral crime]." In ground twenty-seven Galin alleges that the prosecutor failed to prove the elements of the sexual battery charge because "[n]o

evidence that the act was non-consensual was presented by the [prosecutor] at trial."  In ground twenty-eight Galin alleges that the state post-conviction court erroneously rejected both his claim of prosecutorial misconduct and his claim of ineffective assistance of counsel for failure to object to the misconduct.  In ground twenty-nine Galin alleges a denial of his right to a fair trial because the prosecutor introduced false testimony.  In ground thirty Galin alleges a denial of his rights to both a fair trial and due process because the prosecutor introduced evidence of an uncharged collateral crime. In ground thirty-one Galin alleges both a due process violation and a double jeopardy violation because he was "charged with committing one type of sexual battery where the issue of consent was not an issue or required element but the jury was told about another type of sexual battery where the issue of consent would have been one of its elements for the State to prove."[3]

Galin argues (Doc. 26, pp. 2-7) that he presented grounds twenty-four through twenty-eight[4] to the state court in his state habeas petition and alleges that the state appellate court unreasonably rejected the claims in violation of his federal constitutional rights.  Contrary to Galin's contention, he presented none of these substantive claims to the state court in his state habeas petition.  Rather, he presented only claims of ineffective assistance of appellate counsel.  Likewise neither Galin's direct appeal nor his Rule 3.850 motion contained the claims raised in grounds twenty-nine through

───────────────────

[3] Galin appears to challenge the trial judge's instructing the jury on the lesser-included offense of battery for which consent is not an element.

[4] Galin's petition omitted the substance of grounds twenty-four through twenty-eight.  Afforded the opportunity to remedy the omission (Doc. 21), Galin filed a supplement (Doc. 26) stating those grounds. Although directed to respond to the supplemental grounds, the respondent failed to file a response.

thirty-one.  Consequently, the claims are unexhausted and procedurally defaulted because state procedural rules preclude Galin's returning to state court to file either a second direct appeal or a second Rule 3.850 motion.  Galin fails to demonstrate either cause and prejudice excusing his default or a fundamental miscarriage of justice.  <u>See</u> <u>Smith</u>, 256 F.3d at 1138.  This failure to proffer specific facts showing an exception to procedural default renders grounds twenty-four through thirty-one procedurally barred from federal review.

**B.** **Grounds abandoned at Rule 3.850 evidentiary hearing**

**Grounds Six and Fourteen**

In ground six Galin contends that trial counsel rendered ineffective assistance by failing to interview and depose six witnesses.  In ground fourteen Galin contends that trial counsel rendered ineffective assistance by prohibiting Galin from testifying.  Galin presented these claims in his state Rule 3.850 motion and the state post-conviction court granted an evidentiary hearing.  Galin withdrew both claims at that hearing. (Respondent's Exhibit 6, pp. 3-6)  Consequently, the claims are unexhausted because Galin deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  <u>Boerckel</u>, 526 U.S. at 845.  The state rule precluding a successive Rule 3.850 motion bars Galin's returning to state court to present his federal claims in a second Rule 3.850 motion, rendering the claims procedurally defaulted.  <u>See</u> Fla. R. Crim. P. 3.850(b).  Galin fails to demonstrate either cause and prejudice excusing his default or a fundamental miscarriage of justice.  <u>See</u> <u>Smith</u>, 256 F.3d at 1138.  This

failure to proffer specific facts showing an exception to procedural default renders grounds six and fourteen procedurally barred from federal review.

**C.** **Grounds abandoned on appeal of denial of Rule 3.850 motion**

**Grounds Five, Seven, Eight, Eleven, Twelve, Fifteen, Eighteen, Nineteen, Twenty, and Twenty-one**

In ground five Galin contends that trial counsel rendered ineffective assistance by neither conducting an adequate pretrial investigation nor subjecting the prosecution's case to "proper adversarial testing," which caused a denial of Galin's right to a fair trial. In ground seven Galin contends that trial counsel rendered ineffective assistance by prohibiting Galin from participating in voir dire.  In ground eight Galin contends that trial counsel rendered ineffective assistance during jury selection by not challenging several veniremen.  In ground nine Galin contends that trial counsel rendered ineffective assistance by not objecting to the trial judge "advising the prosecution on how to question State witnesses."  In ground eleven Galin contends that trial counsel rendered ineffective assistance by "plac[ing] himself in conflict with [Galin] by having the alleged victim's father give [counsel] an estimate of damages to a vehicle owned by [counsel]."[5] In ground twelve Galin contends that trial counsel rendered ineffective assistance by not impeaching the victim with her pretrial statements.  In ground fifteen Galin contends that trial counsel rendered ineffective assistance by not calling Galin's wife as a trial witness.[6]  In ground eighteen Galin contends that trial counsel rendered ineffective

---

[5]  The victim's father was a technician at a local automobile dealership.  (Respondent's Exhibit 4, Vol. III, p. 273)

[6]  Galin's wife testified on behalf of the prosecution.  (Respondent's Exhibit 4, Vol. II, pp. 193-219)

assistance by not objecting to the victim's testimony about her mental health and by not questioning the victim about her mental condition.  In ground nineteen Galin contends that trial counsel rendered ineffective assistance by not moving for a continuance.  In ground twenty Galin contends that trial counsel rendered ineffective assistance by not objecting to an error in Galin's sentencing scoresheet.  In ground twenty-one Galin contends that trial counsel rendered ineffective assistance by not objecting during sentencing to Galin's designation as a sexual predator.

The state post-conviction court summarily rejected each of these claims in Galin's Rule 3.850 motion without an evidentiary hearing.  (Respondent's Exhibit 7, Order Denying Motion for Post-conviction Relief in Part and Ordering State Attorney to File Response to Limited Issues)  Galin appealed, arguing only that the state post-conviction court erred by failing to hold an evidentiary hearing on these claims.  Galin failed to challenge on appeal the denial of the substantive ineffective assistance claims.  (Respondent's Exhibit 8, Initial Brief of Appellant, pp. 6-9, 12)

In Florida, exhaustion of claims raised in a Rule 3.850 motion includes an appeal from the denial of the motion.  Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979).  If a Rule 3.850 motion is denied after an evidentiary hearing, the applicable state procedural rule provides a briefing schedule.  See Fla. R. App. P. 9.141(b)(3)(C). An issue is waived if not briefed.  See Duest v. Dugger, 555 So.2d 849 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").

Galin failed to challenge on appeal the denial of the substantive ineffective assistance claims.  Because Galin's Rule 3.850 motion was denied after an evidentiary hearing, an appellate brief was mandatory.  <u>See</u> Fla. R. App. P. 9.141.  Appellate counsel's decision to challenge only the denial of an evidentiary hearing rather than the denial of Galin's substantive ineffective assistance claims abandoned those claims.  The Eleventh Circuit recognizes the distinction between a state post-conviction appeal after a summary denial and a state post-conviction appeal following an evidentiary hearing:

> Cortes argues that the district court erred by dismissing his § 2254 petition because he exhausted all issues by appealing the denial of his state Rule 3.850 motion.  He argues that he was not required to file an appellate brief when he appealed the denial of the 3.850 motion, and that his decision to file a brief focusing on two of the issues did not render the remaining issues abandoned.
>
> . . . .
>
> In this case, Florida Rule of Appellate Procedure 9.141(b)(2) provides that in appeals from the summary judgment denial of a Rule 3.850 motion without an evidentiary hearing, "[n]o briefs or oral argument shall be required, but any appellant's brief shall be filed within 15 days of the filing of the notice of appeal.  The court may request a response from the appellee before ruling."  Fla. R. App. P. 9.141(b)(2)(C).
>
> Cortes's appeal did not follow an evidentiary hearing, and, therefore, he was not required to file an appellate brief.  Furthermore, his decision to do so and to address only some of the issues does not waive the remaining issues raised in his Rule 3.850 motion.  <u>See</u> <u>Webb v. State</u>, 757 So. 2d 608, 609 (Fla. Dist. Ct. App. 2000).  Therefore, Cortes did exhaust his state remedies prior to filing his § 2254 petition.  In contrast, had Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver.  (footnote omitted).

<u>Cortes v. Gladish</u>, 216 Fed. App'x. 897, 898 (11th Cir. 2007) (unpublished).  Because he received an evidentiary hearing, Galin's failure to assert on post-conviction appeal the claims presented in grounds five, seven, eight, nine, eleven, twelve, fifteen,

eighteen, nineteen, twenty, and twenty-one of this federal habeas petition renders these grounds unexhausted.

Galin's failure to pursue these ineffective assistance claims on appeal of the denial of his Rule 3.850 motion deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Boerckel, 526 U.S. at 845.  The state rule precluding a successive Rule 3.850 motion bars Galin's returning to state court to present his federal claims in a second Rule 3.850 motion.  See Fla. R. Crim. P. 3.850(b).  Consequently, these grounds are procedurally defaulted.

 Galin fails to demonstrate either cause and prejudice excusing his default or a fundamental miscarriage of justice.  See Smith, 256 F.3d at 1138.  Because Galin fails to proffer specific facts showing an exception to procedural default, the ineffective assistance claims presented in grounds five, seven, eight, nine, eleven, twelve, fifteen, eighteen, nineteen, twenty, and twenty-one are procedurally barred from federal review.

### III.   MERITS

Galin's remaining claims are exhausted and entitled to a review on the merits.

**Ground Ten**

Galin contends that his trial counsel rendered ineffective assistance by neither objecting during prosecution witness Dr. Howard Goldman's testimony nor effectively cross-examining Dr. Goldman about both his diagnosis of the victim's bipolar disorder and the number of psychotropic drugs the victim was taking at the time of the offense.

Galin claims that counsel's failure to elicit this information prevented the jury from

understanding "the nature and true condition" of the victim's allegations against Galin.

The state post-conviction court rejected this claim after an evidentiary hearing:

> The Defendant contended that his attorney failed to
> cross-examine Dr. Goldman, the victim's psychiatrist, by
> asking him about the effects of the different types of drugs
> on the victim.  The Defendant points out that counsel did not
> ask Dr. Goldman any questions.  The Defendant claims that
> Dr. Goldman's testimony allowed the prosecution to explain
> why the victim did not remember the incident and allowed
> the doctor to vouch for the victim's credibility.  The
> Defendant contends that had counsel cross-examined the
> doctor, the jury could have seen that the doctor
> mis-diagnosed the victim to such an extent that the victim
> created the abuse allegation to get off the medications and
> away from seeing the doctor.
>
> The Defendant called [trial counsel] to testify.  [Counsel]
> testified that he took a pretrial deposition of Dr. Goldman but
> did not cross-examine the doctor during trial because he did
> not want the doctor's testimony regarding post-traumatic
> stress syndrome to become a feature of the trial.  [Counsel]
> testified that the subject of Dr. Goldman's testimony was
> litigated extensively before trial and based upon a case from
> the Fourth District Court of Appeal, the court ruled the
> testimony admissible. [Counsel] believed that it was good
> strategy not to pursue the issue because he knew Dr.
> Goldman from prior cases and his reputation as a
> professional witness who would not have been easy to
> control.
>
> . . .
>
> [W]ith respect to the issue of Dr. Goldman's testimony, the
> court finds that, based upon counsel's considered judgment,
> his pretrial deposition of Dr. Goldman, and his prior
> experience with Dr. Goldman's testimony, that counsel's
> failure to cross-examine Dr. Goldman does not constitute
> ineffective assistance of counsel.  [Counsel]'s testimony
> clearly established that his decision not to question Dr.
> Goldman was a strategic decision that was reasonable

> under the norms of professional conduct.  See Chandler v.
> State, 848 So. 2d 1031, 1041 (Fla. 2003).  The Defendant
> simply failed to show that counsel did not make the decision
> to forego questioning without considering alternative
> courses.

(Respondent's Exhibit 7, Order Denying Defendant's Motion for Post-conviction Relief,

pp. 1-2, 4-5).

Dr. Goldman testified at length during the trial about both the victim's mental

health history and the medications he prescribed for her.  (Respondent's Exhibit 4, Vol.

III, pp. 303-25)  Counsel did not cross-examine Dr. Goldman.  (Respondent's Exhibit 4,

Vol. III, p. 326)  During the Rule 3.850 evidentiary hearing counsel testified on direct

examination:

> Q:  Okay.  When you went to trial did you ask Dr. Goldman any
> questions?
>
> A:  Not in cross-examination, no.
>
> Q:  Did you ask him any questions at all?
>
> A:  I don't - - well, if I didn't do cross-examination, since I didn't call him
> as a witness, I wouldn't have asked him any questions.
>
> Q:  Okay.  I was just inquiring about the qualification of your answers.
> So you didn't ask him any questions?
>
> A:  No.
>
> Q:  All right.
>
> A:  Actually there was a big fight about him even testifying.  I had filed
> a motion in limine prior to that because I didn't think he was
> competent to testify as to what he wanted to testify to.  I didn't think
> the law allowed it without having a Frye hearing and [the trial judge]
> ruled against us.

Q:     All right.  Now, you were aware that he was gonna [sic] testify that he believed that . . . the alleged victim in this case suffered from post-traumatic stress syndrome; is that correct?

A:     That's correct.  Dr. Goldman does that in all of these cases.

(Respondent's Exhibit 6, pp. 11-12).

Counsel further testified on cross-examination at the evidentiary hearing:

Q:     Okay.  And did the State express a concern, or was there some requirement in the case law that the doctor's testimony could not become a feature of the trial?

A:     That's correct.

Q:     And do you recall the State asking the court to note the time of the beginning and ending of the doctor's testimony?

A:     Yes.

Q:     And at that point did you make a tactical decision not to pursue any cross-examination of Dr. Goldman's testimony?

A:     Yes.  Dr. Goldman's a professional witness, you know, so, you know, he's one of those that you can't control very well, especially as a psychiatrist, and if we dragged it out and did more, it would become more of a feature of the trial as opposed to just his testimony, whatever his thoughts were.

Q:     Okay.  And, in your opinion, were there other ways that you, as the trial attorney in defending the defendant, could elicit the details about [the victim]'s mental condition from witnesses other than Dr. Goldman?

A:     Well, yes, and I think we already had before Dr. Goldman ever testified.

Q:     And did that include you ask[ing] [the victim] herself, correct?

A:     Yes.

(Respondent's Exhibit 6, pp. 11-12, 33-35).

- 15 -

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment.'" Chandler v. United States, 218 F.3d at 1314.  "The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002).  A habeas petitioner must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. Strickland v. Washington, 466 U.S. at 689; United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).  A defendant's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel.  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of counsel's conduct decides an ineffectiveness claim. Strickland v. Washington, 466 U.S. at 690.

Even if trial counsel had cross-examined Dr. Goldman, no evidence shows that the jury, despite all the evidence adduced at trial, would have acquitted Galin as he hypothesizes.  Galin fails to demonstrate that trial counsel's performance fell outside the bounds of reasonable professional judgment. Waters v. Thomas, 46 F.3d at 1512; Chandler v. United States, 218 F.3d at 1314 (holding that counsel cannot be deemed

incompetent for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy") (quoting Darden v. Wainwright, 477 U.S. 168 (1986)). Galin fails to establish either that the state court unreasonably applied Strickland or unreasonably determined the facts in rejecting this claim. See 28 U.S.C. § 2254(d)(1), (2).

**Ground Sixteen**

In ground sixteen Galin contends that trial counsel rendered ineffective assistance by neither objecting nor moving for a mistrial after the trial judge admitted testimony about an uncharged sexual assault upon Galin's stepdaughter.[7] The state post-conviction court rejected this claim after an evidentiary hearing:

> The Defendant . . . claimed that, contrary to a pretrial ruling on . . . [a] pretrial motion in limine, the prosecution was allowed to question the victim about her observation of the Defendant committing an uncharged offense on his stepdaughter. The Defendant claims that counsel also asked the victim on cross-examination about the uncharged crime.
>
> With respect to this allegation and the related allegation of failure to move for a mistrial regarding this testimony, [counsel] testified that the testimony the State sought to keep out of trial was beneficial to the defense because the Defendant's stepdaughter denied any abuse took place. The court ruled at the time of the State's motion that the testimony regarding the uncharged crime was inadmissible[.] [H]owever, the witness inadvertently testified to the incident during the State's direct examination. [Counsel] testified he used the uncharged crime testimony because he believed it was advantageous for the Defendant because it contradicted the victim's testimony. [Counsel] did not request a mistrial and he never considered one because he believed he was going to get a favorable verdict. Finally, [counsel] testified that his client stated on the record at the end of the trial that he was pleased with the way [counsel] had represented him.
>
> . . .

---

[7] This ground is a combination of the claims raised in grounds ten and thirteen of Galin's Rule 3.850 motion.

> With respect to the motion in limine on the uncharged crime, the court
> finds that . . . the Defendant has not established that he is entitled to
> postconviction relief.  First, despite the Defendant's assertions to the
> contrary, while generally evidence of uncharged crimes is presumptively
> prejudicial, where the Defendant is not prejudiced, the failure to object
> does not always entitle the Defendant to postconviction relief.  Since the
> testimony which the Defendant contends counsel should have objected to
> was beneficial to the Defendant, the Defendant has not shown that his
> attorney's failure to object was so prejudicial that the outcome of the trial
> proceedings would have been different.  See Gibson v. State, 835 So. 2d
> 1159 (Fla. 2d DCA 2002).  In Gibson, the court affirmed the denial of a
> motion for postconviction relief where the attorney's questioning of the
> victim elicited additional uncharged crimes because the defendant had
> failed to show he was prejudiced by counsel's strategy.  Id. at 1161.  As
> the Supreme Court of Florida stated in Chandler v. State, 848 So. 2d 1031
> (Fla. 2003), "[e]ven though collateral counsel disagrees with trial counsel's
> strategy for dealing with the Williams Rule evidence, this disagreement
> does not place trial counsel's decision on how to deal with the evidence
> outside the realm of reasonably effective assistance of counsel. Id. at
> 1041 (citation omitted).

(Respondent's Exhibit 7, Order Denying Defendant's Motion for Post-conviction Relief,

pp. 3, 5-6) (footnote omitted).

Before trial the prosecutor filed a motion in limine seeking preclusion of testimony

from Galin's stepdaughter about whether Galin had sexually abused her.  The state trial

judge ruled:

> All right, so we are agreed, or I have said that I believe any statements
> attributed - - well, excuse me.  [Galin's stepdaughter], who was in the
> room [with the victim on the night of the offenses] can testify and [defense
> counsel] can ask questions, and [defense counsel] can ask the victim
> about any statements that she may have given [i]n depositions under oath
> about what she saw happen, and that [Galin's stepdaughter] can obviously
> testify about what happened that night.  We agree, however, that the
> general question to her, have you ever been abused by Mr. Galin, will not
> be admissible at this point.

(Respondent's Exhibit 4, Vol. I, p. 30).

During direct examination at trial by the prosecutor Galin's stepdaughter testified:

> Q:   At some point . . . there's been an allegation involving you and your stepfather.
>
> A:   Yes.
>
> Q:   And is it your position today that nothing happened between you and your stepfather that night?
>
> A:   Yes.

(Respondent's Exhibit 4, Vol. II, pp. 235-36)  Galin's stepdaughter further testified on

cross-examination:

> Q:   Okay.  As I understand it, your testimony is that [at] no time did [Galin] ever inappropriately touch you?
>
> A:   That's my testimony.
>
> Q:   That's the truth?
>
> A:   Yeah.

(Respondent's Exhibit 4, Vol. II, pp. 239-40).

> Counsel testified during the Rule 3.850 evidentiary hearing:

> Q:   Okay. . . . Th[e] motion in limine pertained to testimony with regard by [sic] the victim, with regard to Mr. Galin's stepdaughter.
>
> A:   Yes.
>
> Q:   Do you recall that motion in limine being addressed to the court?  In fact, I believe it was [the prosecutor] who addressed it because her concerns were kind of a reverse Williams Rule, I guess, sort of thing.  She didn't want you presenting evidence that he had never molested his stepdaughter.
>
> A:   Well, I know that she had some concerns because she was aware that if [Galin's stepdaughter] was called or [Galin's] wife was called, I would be cross-examining and she was aware that there was an investigation which found he had not molested his stepdaughter and obviously there was some things beneficial to us to be able to cross-examine about that.

Q:     All right.  But the court ruled that you couldn't cross-examine with
       [sic] that regard?

A:     No, that's not what the court ruled, if I recall correctly.  The court
       ruled that, actually, that would not even come into evidence, period.

Q:     Period?

A:     But once it's brought out, it came out, the court allowed me to ask
       those questions, which I thought were advantageous to us.

Q:     Okay.  Let's backup a minute.  What came out, was it evidence of a
       collateral crime where the victim accused Doyle Galin of molesting
       his stepdaughter in her presence?

A:     Yes.  I believe [the victim] - - I don't recall, I don't recall if it was in
       the testimony or not.  I know it was in the depositions.  I know it was
       in statements she had given that she had been awake and seen
       this, but I knew that [Galin's stepdaughter] was gonna [sic] deny
       that it even happened and she was gonna [sic] deny as to where
       they were on the bed so that it couldn't possibly have happened
       because the three of them could not have been in the bed at the
       same time.

. . . .

Q:     So you don't recall it being said at trial by the alleged victim that Mr.
       Doyle Galin did molest, she saw him fondle his stepdaughter?

A:     I don't recall it.  It may have been in the transcript.  I haven't read all
       the transcript anyway saying she may have said that.  If she did,
       she would have been cross-examined on it, I believe, and I know
       [Galin's stepdaughter] was when [she] was called, the stepdaughter
       was called.

Q:     Did you ever move for a mistrial based on that statement?

A:     No, I did not, because I thought the same, my ability to
       cross-examine on that statement was beneficial when [Galin's
       stepdaughter] was gonna [sic] deny that it ever happened.

Q:     Okay.  So do you recall it being said now?

A:  I don't recall if it was said.  If you show me the transcript, if it was said by her, I know that we cross-examined [Galin's stepdaughter] on that during the course of the trial.  [Galin's stepdaughter] was the alleged person that [the victim] said she saw Mr. Galin touch, or, actually, I think kiss her breast or something.

. . . .

Q:  Okay.  [Counsel], I'm directing you to page 127 of the trial transcript.  It appears that [the prosecutor] is engaging in her direct examination of [the victim].

Question:   Did anything happen in between?

Answer:      Yes.

Question:   Can you tell the jury what happened?

Answer:      He went over to [his stepdaughter] and he was doing the same thing he had been doing to me.

Question:   So, to the best of your knowledge, he sucked on her breast as well?

Answer:      Yes.

Q:  Did you make any objection?

A:  No, I did not.

Q:  Did you move for a mistrial?

A:  No, I did not.

Q:  Was it your understanding that the judge had ruled in the motion in limine that there was to be no testimony with regard to [Galin's stepdaughter]?

A:  Yes, I did, but at that point I felt it was to our advantage to be able to cross-examine about that, to show that it was untrue.

Q:  Had you moved for a mistrial at that point, is it your understanding that you would have been entitled to [a] mistrial as a matter of law?

A:      I don't think so, as a matter of law, no.

. . . .

Q:      And if you need reference to the motion in limine, it begins on page
        20 [of the trial transcript], prior to trial beginning.  This particular
        motion in limine starts on page 20. . . .There's a clarification on
        page 24:

                    THE COURT:          You're telling us that you're
                                        not going to have [the
                                        victim] say anything about
                                        what she thinks Mr. Galin
                                        might have done with [his
                                        stepdaughter], is that
                                        right?

                    [PROSECUTOR]:       No, sir.

                    THE COURT:          All right.  Okay.  So, you're
                                        not gonna [sic] do that?

                    [PROSECUTOR]:       Right.

. . . .

Q:      At the time this testimony was offered by the alleged victim, this
        testimony regarding a collateral crime with regard to [Galin's
        stepdaughter] and Mr. Doyle Galin going over and sucking her
        breast, had you been paid in full for your services?

A:      I don't believe so.  I don't believe I still have been paid in full, but
        that doesn't have anything to do with whether I would move for a
        mistrial or objection.

(Respondent's Exhibit 6, pp. 18-24).

Counsel testified on cross-examination at the evidentiary hearing:

Q:      To your recollection, did the defendant request that you ask for a
        mistrial?

A:      No, he did not.

Q:     Was that ever brought up?

A:     No.

Q:     Do you recall a colloquy that was taken . . . by [the trial judge], I believe at the conclusion of the proceedings, as to what the defendant, how he thought you had performed during the trial?

A:     Well, at the conclusion when Mr. Galin indicated he did not, he would not be putting on a defense, they asked him the normal things about this is your decision, it's free and voluntary, discussed it with [counsel].  And I believe he asked, ["]Has [counsel] done everything you've asked him to do?["] and [Galin] said, ["]He's done an excellent job.["]

Q:     Now, as [post-conviction counsel] questioned you, it was the State's, my motion in limine prior to trial that there be no evidence brought out by either side of the accusation that the defendant also performed oral sex - -

A:     Right.

Q:      - - on his stepdaughter?

A:     Uh-huh.

Q:     Is that yes?

A:     Yes.

Q:     And just for the Court's information, this was an allegation where the victim . . . was over at her best friend's house and the two girls got drunk and when they got drunk, they passed out and came in and out and at one point [the victim] said she woke up to the defendant performing oral sex on her friend.  Basically that's - -

A:     In general, basically that's the basis of the charges.

Q:     Yeah, that was the gist of it.  And then at one point [the victim] had said that, in her opinion, she had seen the defendant move from her to his stepdaughter . . . and perform oral sex on her as well, in addition to the sucking [of] the breast, correct?

A:     Yeah.  No, I don't believe that there was ever an allegation that he performed oral sex on [his stepdaughter].

Q:     Just that he touched her in an inappropriate manner?

A:     Kissed her breast.

Q:     And . . . the defendant's stepdaughter denied that that had happened?

A:     Yes, she did deny it.

. . . .

Q:     And [Galin's stepdaughter] continuously said, not that she didn't know that it didn't happen because she was passed out, but that she was sure that it didn't happen; is that right?

A:     Right.  Because if you look at the cross-examination of [Galin's stepdaughter] in the trial transcript, she is a light sleeper, she woke up easily.  In fact, I think she said she woke up every time somebody opened the door out in the witness [sic] room where she was, and so it wouldn't have happened.  She also said because of the size of the bed, no way the three of them could have been in bed together.

Q:     And what point were you hoping to make by getting that evidence in that [Galin's stepdaughter]'s a light sleeper and, you know, [the victim] made this accusation that the defendant also did this to his own stepdaughter, what were you hoping to convey to the jury by having that come out?

A:     Well, that one, the allegations of whatever she said w[ere] not credible.  We were attacking her credibility because she says, ["]I saw this.["]  You have the person who says it didn't happen.  It didn't happen that night.  It's never happened.  And there was an investigation, obviously, that determined there was no reason to proceed or remove [Galin's stepdaughter] from the home.  So I thought that that would affect the credibility of [the victim].

Q:     Okay.  So you thought it was to your advantage when it came out through direct examination by the State?

A:    Yes. . . .What it came down to at the end of the trial was [the victim]'s testimony against [Galin's stepdaughter] and against Lynn Galin, the wife, who were there.  That's why Mr. Galin wasn't called.  I mean, I prepared to have him as a witness but at that point it was a swearing match.  I thought [the victim's] credibility had been affected and I didn't think it was beneficial to have him testify.

(Respondent's Exhibit 6, pp. 24-28).

Counsel testified on re-direct examination at the evidentiary hearing:

Q:    Now, when this testimony came out regarding Mr. Galin allegedly molesting his stepdaughter, you never stopped, you never asked for a recess, you never explained to him, ["]We can ask for a mistrial, but I think it's going good, so let's keep going?["] [Y]ou never had a discussion with him about the fact that he was entitled to a mistrial at that point, did you?

A:    No, I did not.

Q:    Okay.  Now, you knew that you couldn't count on [Galin's stepdaughter] being absolutely credible.  You knew she was drunk to the point that at some point she had passed out, correct?

A:    Well, I knew that, yes.

. . . .

Q:    Now, you knew, according to the court order with regard to the motion in limine, that [Galin's stepdaughter] would not be allowed to testify that Doyle never molested her, right?

A:    I guess, if that's what the court ruled.

. . . .

Q:    Are you aware that collateral crimes [are] presumed to be prejudicial?

A:    Not right offhand, no.

(Respondent's Exhibit 6, pp. 43, 45-46).

Galin fails to overcome the presumption that trial counsel's decision to forego both objecting to the admission of testimony about an uncharged sexual assault upon his stepdaughter and moving for a mistrial despite the ruling on the pretrial motion in limine were anything other than trial strategy. <u>Strickland v. Washington</u>, 466 U.S. at 689; <u>United States v. Perry</u>, 908 F.2d at 59. Trial counsel must decide which strategic and tactical option to pursue. <u>See</u> <u>e.g.,</u> <u>Dingle v. Sec'y, Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"). Galin fails to show that counsel's objecting to the admission of testimony about the uncharged collateral conduct would have resulted in his acquittal. Absent a showing of prejudice, Galin's claim warrants no federal habeas relief because <u>Strickland's</u> requirements remain unsatisfied. Galin fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim. <u>See</u> 28 U.S.C. § 2254(d)(1), (2).

**Ground Twenty-three**

Galin is serving a concurrent term of fifteen years imprisonment. Galin contends that his sentences violate the prohibition against double jeopardy because the sentences result from two separate convictions that arose from a single incident. The state court rejected this claim in Galin's state Rule 3.800(a) motion to correct sentence:

> The Defendant next contends that his sentence violates the constitutional prohibition against double jeopardy because he was sentenced for a single incident on a single victim. The Defendant contends that the court

erred in denying his attorney's double jeopardy argument at trial[8] because the court failed to use the appropriate test that requires comparing the statutory elements of the offenses.

The Defendant's motion is denied . . . . [T]he Defendant's claim is without merit as he was convicted of separate criminal acts that do not implicate double jeopardy concerns.  See Darville v. State, 912 So. 2d 63 (Fla. 4th DCA 2005) (affirming multiple convictions for sexual battery and lewd and lascivious molestation arising from [a] single criminal episode).

(Respondent's Exhibit 11)  The state appellate court affirmed the denial of relief.

The Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense."  Ohio v. Johnson, 467 U.S. 493, 498 (1984). "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense."  Garrett v. United States, 471 U.S. 773, 778 (1985). The Double Jeopardy Clause permits cumulative punishments for a single incidence of criminal behavior when the legislature clearly intends cumulative punishments.  Williams v. Singletary, 78 F.3d 1510, 1512 (11th Cir. 1996).  Absent a clear indication of contrary legislative intent, the "same-elements" test announced in Blockburger v. United States, 284 U.S. 299 (1932), determines whether separate statutory provisions authorize cumulative punishment for a single criminal incident.  Williams v. Singletary, 78 F.3d at 1512.

The following rules of construction apply to Florida's criminal statutes:

_____

[8]  Counsel moved before trial to dismiss the information and argued that the prohibition against double jeopardy precluded Galin being tried for both sexual battery and commission of a lewd and lascivious act arising from the same incident.  (Respondent's Exhibit 4,Vol. I, pp. 3-9)  The state trial judge denied the motion.

(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.

. . . .

(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively.  For the purpose of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

Fla. Stat. § 775.021(1), (4)(a).  The Florida legislature adopted the <u>Blockburger</u> test through the exceptions to the rules of construction delineated in Section 775.021(4)(b).[9]

The "same-elements" test examines whether each offense contains an element not contained in the other offense.  "[I]f each statutory offense requires proof of an element not contained in the other, the offenses are not the 'same' and double jeopardy is no bar to cumulative punishment."  <u>Williams v. Singletary</u>, 78 F.3d at 1513. Otherwise, "where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies."  <u>United States v.</u>

---

[9]  Section 775.021(4)(b) provides:

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent.  Exceptions to this rule of construction are:

    1.  Offenses which require identical elements of proof.
    2.  Offenses which are degrees of the same offense as provided by statute.
    3.  Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021(4)(b).

Dixon, 509 U.S. 688, 696 (1993).  Although federal law governs the evaluation of double jeopardy, state law governs the interpretation of a state criminal statute.  Tarpley v. Dugger, 841 F.2d 359, 364 (11th Cir. 1988).

The amended information charged Galin with two separate statutory offenses. Each offense requires proof of a different element.[10]  Consequently, Galin's double jeopardy claim fails because the charges were not the "same offense" under the Blockburger test.  See Williams v. Singletary, 78 F.3d at 1513.  Galin fails to meet his burden of proving that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting  this claim.  See 28 U.S.C. § 2254(d)(1), (2).

Accordingly, Galin's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Galin and close this action.

ORDERED in Tampa, Florida, on March 15, 2011.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[10]  The amended information (Respondent's Exhibit 1) charged Galin with committing both sexual battery on a person twelve years or older (Count One) and a lewd and lascivious act on a child under sixteen years (Count Two).  The trial judge instructed the jury (Respondent's Exhibit 4, Vol. III, pp. 416-17) that conviction for sexual battery required the prosecutor to prove (1) that the victim was twelve years or older, (2) that Galin committed an act upon or with the victim in which the sexual organ of the victim had union with the mouth of Galin, and (3) that the act was committed without the victim's consent. Conviction for committing a lewd and lascivious act on a child under sixteen years required the prosecutor to prove (1) that the victim was under sixteen years, and (2) that Galin handled or fondled the victim in a lewd, lascivious, or indecent manner.